JS - 6    **LINK:** 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Stephen Montes Kerr | None | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| None | | None | |

**Proceedings:**      (In Chambers)

### ORDER DISMISSING CASE FOR LACK OF PROSECUTION

### I.
### BACKGROUND

The following sets for the briefest outline of the lengthy history of this lawsuit and related wage and hour litigation brought by attorney Gregory G. Petersen on behalf of officers of the Los Angeles Police Department ("LAPD"). In recent years, despite this Court's best efforts, Mr. Petersen has actively sought to scuttle the resolution of these cases. At the same time, he has failed to make himself ready to try those cases that remain. The Court has repeatedly warned Petersen that such conduct is unacceptable, but he has ignored those warnings. The last warning carried with it an admonition: be ready to try this case, or find someone who can be ready, by January 28, 2014, (a date Petersen proposed), and that failure to do so would result in the dismissal of the remaining claims for lack of prosecution. Petersen has now advised the Court that he cannot be ready for trial on the date he selected, and that he has not brought in trial counsel who can be available on that date.

For these reasons and others discussed in greater detail below, this case is **DISMISSED FOR LACK OF PROSECUTION.** The Court's decision, as reflected in this order, has been made after considerable review of the record and reflection on the facts and circumstances that have led to its ruling. The parties should therefore refrain from asking this Court to reconsider its ruling. Whatever remedies may be available to the parties must be sought in a different forum.

JS - 6          LINK: 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

**A. PRE-TRIAL PROCEEDINGS**

Attorney Petersen filed the present wage and hour lawsuit, which was brought by 40 LAPD officers, in March 2003.[1] After the Court denied cross-motions for summary judgment in March 2007, the Court conducted numerous status conferences in this and several related LAPD wage and hour cases to consider the impact of related litigation (the Maciel case) before Judge Lew, the connection between the pending related cases in this Court, and the status of any mediation efforts in these cases. (E.g., Docket No. 557.) In October 2007, after it became clear that the case could not be resolved through mediation, the Court set the case for trial on May 13, 2008. (Docket No. 475.)

Although Petersen filed the cases, he made fewer and fewer court appearances as time passed. Not long after the Court set the case for trial, Attorney Gregory Hafif and the law offices of Herbert Hafif became associated as counsel for Plaintiffs. (See Docket No. 476 [Scheduling Conference Report filed by Hafif.]) Although the circumstances of Mr. Hafif's association were not revealed at the time, Mr. Hafif described those circumstances more than three years later when Petersen, who had not participated in the case during that entire period, sought to reassert his authority and elbow Hafif out of the case. Hafif advised:

> I've been taking full authority of this case for over three years when, I think this Court will recall back in 2008, I believe it was, when he had his falling out with Jackson DeMarco Tidus & Peckenpaugh. He had left that firm and he was -- Mr. Petersen -- was basically ill and broke, and these cases were going to fall on their tail. I actually hired the lawyers that were working at that firm so these cases could continue. I hired them out. Hired Ms. Klaus later. I hired two other lawyers. I hired the paralegals that he speaks about, plus all the lawyers that were working at my office just to keep these cases alive and take them to trial.

(Docket No. 924 [Transcript of Sept. 29, 2011 Status Conference], at 18.) Thus, in large part because of Petersen's ill health, Hafif took the lead role in this case in early 2008.

---

[1] During the pendency of this lawsuit, Petersen has filed four other wage and hour lawsuits on behalf of several thousand LAPD officers, all of which have been handled by this Court. Two of the cases, Alaniz, et al. v. City of Los Angeles, CV 04-8592-GAF and Mata, et al. v. City of Los Angeles, CV 07-6782-GAF are still pending and are the subject of intense mediation efforts being overseen by a Special Master. Two others, Batts, et al. v. City of Los Angeles, CV 06-843-GAF and Berndt, et al. v. City of Los Angeles, 11-8579-GAF have been resolved on defense motions for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

Thereafter, the effort to move the case to trial was side-tracked by two significant legal issues – the proper compensation for so-called "gap time" under the FLSA and the right of the named plaintiffs to recover for donning and doffing their uniforms – that came to the fore in 2008 and consumed much of the Court's time in 2008 and 2009. Those issues were addressed through motions for summary judgment. (See, e.g., Docket No. 652, July 28, 2008 (gap-time motion); Docket No. 664, December 1, 2008 (ruling on gap-time motion); Docket No. 666, February 2, 2009 (donning and doffing motion); Docket No. 684 (donning and doffing order.) With respect to donning and doffing, the Court concluded that it could not resolve the issue as a matter of law and allowed the claim to go forward. The Court immediately ordered the parties to meet and confer to prepare a proposal regarding the issues that remained for trial. (Docket No. 685.)

After receiving proposals from the parties, the Court eventually ordered that the parties be permitted a period of an additional discovery. The discovery was limited to two issues: (1) donning and doffing because the parties had not previously conducted discovery relating to that issue and (2) claims not asserted before the September 2004 discovery cut-off. (Docket No. 712.) In the meantime, after the parties had commenced such discovery in early 2010, the Ninth Circuit issued an opinion that placed in doubt an officer's right to seek compensation for time spent donning and doffing her uniform. Bamonte v. City of Mesa, 598 F.3d 1217 (9th Cir. 2010). That led to an additional round of briefing and eventually to an order precluding plaintiffs from seeking recovery on that theory. (Docket No. 748.) Further, the parties thereafter stipulated that there were no claims that post-dated the September 2004 discovery cut-off, which led to a termination of any further discovery proceedings.

Thereafter, the Court issued a new schedule setting the case for trial on April 12, 2011 and for a status conference on December 20, 2010. (See Docket Nos. 774, 775.) As with the extensive pre-trial proceedings, the proceedings leading to trial and to the trial itself were handled entirely by the Hafif firm.

**B. TRIAL**

*1. Plaintiffs Achieve Some Success at Trial*

After the case was set for trial, the Court conducted a status conference on December 20, 2010. Hafif and Klaus and another of their associates appeared on behalf of plaintiffs. Petersen did not attend. (Docket No. 775.) The Court held additional pre-trial conferences on February 1, 2011, and February 15, 2011, both of which were attended by Hafif and Klaus, but not Petersen. (Docket Nos. 778, 784.) Thereafter the Court conducted a final pre-trial conference

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

on April 8, 2011. Ultimately, with substantial input from counsel, the Court ordered that liability on the claims presented would be determined as to four exemplar plaintiffs with the results to be used as a basis for computing damages and resolving the claims of the remaining plaintiffs. After seven days of trial, which were conducted on behalf of Plaintiffs by Hafif and Klaus, the jury returned special verdicts partially in favor of the four plaintiffs.

### 2. *Petersen Attempts to Derail Settlement*

The City and Plaintiffs, represented by Mr. Hafif, were able to determine the amounts due the four exemplar plaintiffs and to develop a formula for computing damages due the remaining 21 plaintiffs.[2] Apparently, when word of the negotiations between Hafif and the City reached Petersen, he became embroiled in a bitter dispute with Hafif apparently over attorneys fees, although Petersen adamantly denies that that is the source of the dispute.[3] Petersen even attempted to oust Hafif from the litigation by asserting that he had "fired" the Hafif firm even though that firm was the only counsel that had actively represented plaintiffs since 2008. In any event, although Petersen has never provided a coherent explanation for his effort to oust the Hafif firm, he aggressively sought to undermine the settlement of his lawsuit.

That effort continued through the end of 2011 and into 2012. At some point in 2012, Petersen even became embroiled with the Hunt Ortman firm with whom he had become associated and made such serious threats against that firm that it filed a motion with the Court to withdraw from any further participation in this case. (Docket No. 931.) In granting that motion, this Court wrote:

> [T]here is more than ample reason to find that Petersen has made it impossible for the Hunt Firm to work with him in this action, and that the Plaintiffs have made carrying out employment unreasonably difficult for the Hunt Firm. Petersen's actions in this case are completely unreasonable and have made a complete mess of these cases. Before the events giving rise to this motion occurred, he single handedly destroyed nearly a year's effort by this Court, the Hafif firm, and the City to schedule and complete exemplar trials. Those trials were conducted as part of an effort to establish a basis for settling the

---

[2]As noted above, at the outset, the case included 40 named plaintiffs. A number of those plaintiffs dismissed their claims during the pendency of the lawsuit. The Court is unaware of the circumstances surrounding these dismissals.

[3]Despite Petersen's denials, Hafif concedes that the dispute is essentially over the allocation of attorney's fees. (Docket No. 924, Transcript, at 8.)

Case 2:03-cv-02190-GAF-AJWX Document 1053 Filed 01/08/14 Page 5 of 15 Page ID #:11606

JS - 6   **LINK:** 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

> thousands of pending wage and hour claims. That effort seemed to have been successful until Peterson, who had been out of the picture and had no participation in these efforts, elbowed his way back into the case and advised numerous plaintiffs that the Hafif firm was working against their interests – a contention that has never been supported in any communication Petersen has had with this Court. Since bringing these cases to a grinding halt, Petersen has associated with the Hunt Firm but has now turned on them as well and has threatened to sue them. He further demanded that the Hunt Lawyers have no contact with "his clients," but then, until the last minute, opposed their withdrawal and refused to assist them in contacting the Plaintiffs to notify them of the pending motion. Frankly, his inconsistent positions border on the nonsensical, but certainly make clear that the Hunt Firm's continued representation of Plaintiffs is untenable. (Mem. at 15-16.)

(Docket No. 935.)

At various status conferences, Petersen and Hafif asserted that they would endeavor to resolve their differences, and the Court, mistakenly as it turns out, allowed them months to address their problems. Nothing came of it. Essentially, all of 2012 was lost to the bickering among plaintiffs' counsel. When it became clear that nothing could be resolved by counsel, the Court convened a further status conference in early 2013 and appointed Hon. Dickran Tevrizian (Ret.) as Special Master in this case. Through his efforts along with the Hafif firm and defense counsel, 21 of the 25 Nolan plaintiffs remained with the Hafif firm and settled with the City. And despite the decision of those 21 plaintiffs to settle, Petersen thereafter sought Court intervention to vacate the settlements. (Docket No. 962.) The Court received the response of the City and the settling plaintiffs to Petersen's objection, (Docket Nos. 964, 965), and entered judgment on those settlements, which left the claims of four plaintiffs unresolved.

### 3. *Trial of the Final Four Plaintiffs' Claims*

#### a. The November Trial Date

On September 17, 2013, when it received the proposed judgment settling the claims of 21 plaintiffs, the Court set the remaining cases for trial on November 19, 2013, with a final pre-trial conference on October 28, 2013. No one objected at that time. However, on October 10, 2013, Plaintiffs filed an ex parte application seeking a continuance of the trial because of Petersen's ill health. (Docket No. 985.)[4] This was not the first time Petersen's health and his inability to meet

---

[4] In the meantime, the City prepared and filed its pre-trial documents and various motions in limine. (See Docket Nos. 997-1005.)

JS - 6  LINK: 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

his obligations to clients had been an issue in the case. (See, e.g., Docket No. 924 [Transcript of Sept. 29, 2011 hearing at 7-8, 14, 18-19.) Indeed, when the Court conducted hearings in early 2013 appointing the Special Master, Petersen was not able to attend and sent Timothy Lam, who was ill-prepared on the issues in this case, to cover the hearing for him. (Docket No. 940.) The Court has repeatedly admonished Petersen that he needed to arrange to have knowledgeable counsel involved in the case to attend hearings and handle court proceedings given the fragile state of his health. Nevertheless, Petersen was again asking for an accommodation based on his health problems, but failed to provide any information from a medical professional to support the request. (See Docket No. 996.) The Court refused to take any action without specific information from a medical professional, and finally received a sealed declaration of Dr. Au Bui regarding Petersen's medical condition. (Docket No. 1015.) The Court then set the matter for a status conference.

### b. The January Trial Date and the Court's Warning

The Court conducted a status conference on October 28, 2013, which like so many others was not attended by Petersen. Rather, yet another lawyer, Richard Hutchinson, specially appeared on his behalf. (Docket No. 1023 (Transcript of October 28, 2013 Status Conference).) Hutchinson advised that he was not yet involved in the substance of the case and might not ever be involved, but was attending because Lam, who had made prior appearances was out of town. (Id. at 1-2.) The Court noted that the case was more than ten years old and commented:

> And I don't know how much you know about the history, but the history is such that I don't have a lot of confidence, to put it in plain English, in Mr. Petersen and in anything that Mr. Petersen says to me. I am unhappy about what I was told previously by his healthcare professionals in terms of his ability to be available to try the case if it needed to go to trial. But it does appear that he is certainly undergoing surgery now . . . within days of today's date.

Id. at 5.

The Court noted that Petersen's application requested January 27, 2014 as the new trial date, and asked "what assurances can the plaintiffs give me that they're going to be able to meet that date?" (Id. at 12.) Hutchinson cited to Dr. Bui's declaration as support, at which point this Court stated:

> There's not going to be a complication that's going to stop this trial. If I continue this case, you and Mr. Lam better be ready to go or somebody better be ready to go

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

> because it is not going to get continued. I haven't even decided at this point – I don't feel like I'm getting very good assurances at this point and you may have – you may think that the doctor's representations are good and specific. . . . But Mr. Petersen has been sick for a long time. He has not been able to meet his obligations to this court for a long time. . . . So you know I need some kind of assurance that this case is going to get resolved; and I'm not really hearing it at this point.

(Id. at 12-13.) Furthermore, when questioned Hutchinson indicated that he would not accept a first chair trial role in the case, and that Lam had only 18 months experience as a lawyer and probably had no trial experience. (Id. at 15.) At the end of the hearing, the Court noted:

> I'm going to wait until I talk to Mr. Lam to make a final determination on the trial date for Nolan. I think it's fair to say I'll probably set it for that January 28th date; and -- but if I do, Mr. Hutchinson, you need to tell the people on your side that date will be chiseled in marble.
> MR. HUTCHINSON: Understood, Your Honor.
> THE COURT: And whatever Mr. Petersen as the lead has to do to get the case tried, if that's him doing it or retaining a trial lawyer to do it for him, whatever he needs to do, he needs to understand that that case will be called for trial on that date.

(Id. at 22.)

The Court then conducted a further status conference that Mr. Lam attended. (Docket No. 1021; 1032 (Transcript of Nov. 4. 2013 Proceedings.)) The Court asked for assurances regarding Mr. Petersen's availability, and Lam stated, "Right now it's really up to the Doctors and Mr. Petersen's condition." (Docket No. 1032, at 6.) Given the age of the case and the repeated failed efforts to get the Nolan claims resolved, the Court responded as follows:

> No, it's not just up to the doctors. It's up to you and Mr. Petersen to find somebody who will try it. Let me be clear, Mr. Lam. Here's what's going to happen. If this case doesn't go to trial on the 28th of January, if somebody isn't here to answer ready, I will dismiss the case for lack of prosecution, period.
>
> MR. LAM: Understood.

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

(Id.)  The status conference finished with the Court reiterating its prior admonition:

> And you've got to tell Mr. Petersen I'm absolutely serious about this. If those four plaintiffs come to trial on the 28th and Mr. Petersen comes in here and says: We're just not ready to go, that will be the last day that this case is pending before me.
>
> MR. LAM: Understood.

(Id. at 12.)

### c.  Plaintiffs Ignore the Warning and Seek a Further Continuance

Although counsel acknowledged that he understood the Court's admonition and Plaintiffs' obligation to insure that someone would be ready to try the case on the Court's most recent schedule, the Court's admonition has been ignored.  On December 20, 2013, Plaintiffs applied ex parte to continue the trial to a date after February 18, 2014.  (Docket No. 1035.)  The application, which Hutchinson prepared, was supported by declarations indicating that Petersen's recovery was not going well (something that this Court anticipated) and that a continuance was required.  The application explained, "At this time, however, it appears that [Petersen's] recovery may be significantly protracted. He continues to receive treatment and it is likely that he will need additional hospitalizations, and possibly additional surgeries, in the near future."  (Id. at 2.)  According to the application, work on this case could not be completed because of Mr. Petersen's health, and Mr. Hutchinson's unavailability due to holiday commitments.  The application also advised that no trial counsel had been retained for the January 28, 2014 date, but that counsel could be available roughly 45 days thereafter.  In a later declaration, Hutchinson advised that new trial counsel could be available to try the case on February 18, 2014.  (Docket No. 1041.)

Defendants opposed the motion citing, among other things, Petersen's repeated efforts to undermine the results of the exemplary trial in this case and Petersen's failure to heed the repeated warnings of this Court that the trial date Petersen had proposed would not be moved. Defendants have asked that the case be dismissed for lack of prosecution.

/ / /

JS - 6     **LINK:** 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

## II.
## DISCUSSION

**A. REQUESTS FOR CONTINUANCE**

Both parties agree that the Court has substantial discretion to control its own calendar. Danjaq LLC v. Sony Corp., 263 F.3d 942, 960-61 (9th Cir. 2001); Rios-Barrios v. I.N.S., 776 F.2d 859, 862-63 (9th Cir. 1985). Four factors bear on the exercise of that discretion: (1) whether the requesting party has been diligent; (2) whether there is a genuine need for the continuance; (3) whether the continuance will inconvenience the Court and the opposing party including its witnesses; (4) whether the requesting party will suffer prejudice if the request is denied. No single factor is dispositive, except that a reviewing court will not disturb a denial of a continuance where the Plaintiff has failed to show prejudice. Danjaq, 263 F.3d at 961; see also United States v. 2.61 Acres of Land, 791 F.2d 666, 671 (9th Cir. 1985.)

*1. Prejudice to Plaintiffs*

Here it is not clear that Plaintiff can show any prejudice. Because of poor health, Petersen has not been available for years to handle any proceedings in this Court and over the past three years has appeared only to explain why he has sought to derail all efforts to resolve this litigation. The recent reports strongly suggest that it is unlikely that he will ever again be strong enough to withstand the rigors of a trial practice. Whether he will in fact obtain another trial lawyer to take over the case is also uncertain. What is clear is that he has no one available to try the case on the Court's schedule, and that statements made to the Court regarding the possible availability of new counsel are not terribly credible.

The Court was first told that new counsel could be available to try the case on February 18, 2014. At a status conference conducted on January 3, 2014, Hutchinson advised the Court that the date was incorrect and that no new attorney could be available until March 4, 2014, due to other trial commitments, and that no counsel would associate into the case unless the trial was continued. (See also Docket No. 1051.) After defense counsel advised that the only date on which they could possibly be available was February 25, 2014, the Court received an improper post-conference ex parte contact from proposed new counsel indicating that he could be available for trial on February 25, 2014, despite having previously stated otherwise. This assertion was contained in a declaration that has never been filed with the Court and that contains no explanation as to how counsel, who claimed to have another trial that would extend through the end of February, can be available for trial in this Court on February 25. The unexplained inconsistency raises questions regarding the credibility of the claim.

JS - 6     LINK: 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

Having noted these problems, because the Court's refusal to continue the trial will result in a dismissal of the claims of the remaining four plaintiffs, the Court will disregard all of the foregoing and assume that a denial of the continuance will result in prejudice. Even so, the request will not be granted.

### 2. Diligence

Plaintiffs simply cannot claim to have acted diligently in this case. Starting with the aftermath of the exemplar trials in 2011, Petersen has aggressively sought to derail the resolution of all plaintiffs' claims without taking any steps of his own to move the case to resolution. Even though the Court stated on the record that the exemplar trials were being conducted for the express purpose of creating a framework for settlement, Petersen claimed that post-trial efforts to settle caught him by surprise. Instead of providing assistance in that effort, he attempted to "fire" the Hafif firm that had represented all plaintiffs, including the four exemplar plaintiffs at trial, for the prior three years. Despite representations to the Court that he would attempt to resolve his differences with the Hafif firm, Petersen persisted in efforts to undermine settlement negotiations and eventually persuaded four of the remaining 25 plaintiffs to terminate Hafif's authority to negotiate on their behalf, and eventually opposed and objected to the settlement that 21 of the plaintiffs negotiated with the City. In the meantime, Petersen did nothing affirmative. Instead of asking for assistance from the Court regarding the dispute, or requesting a trial date for those who did not want to settle with the City, he did nothing. Then when the Court set a specific trial date in this case, he again did nothing except to associate an attorney who does not try cases, and ask for a continuance of the trial due to his health problems. When he asked for the continuance, Petersen proposed January 27, 2014, as the new trial date, which was supposedly ample time to allow him to recover his health and act as trial counsel. Although the Court was skeptical of the sincerity in the request and conducted two status conferences during which the Court sought and received assurances that someone would be available to try the case on January 28 even if Petersen's health problems precluded his participation, the Court agreed to one final continuance of the trial. Since then, Petersen has advised that he cannot be ready to try the case on that date due to his failing health, and that he has not substituted new counsel into the case who can be available to try the case on the Court's schedule.[5]

---

[5]The Court also finds it disingenuous that Plaintiffs cannot prepare for trial or adhere to other scheduling requirements of the Court but somehow manage, while asking for a continuance, to file a New Year's Eve Ex Parte Application for Order Setting Issues to be Tried. (See Docket No. 1048.) Given the Court's order of dismissal, the New Year's Eve ex parte application is **DENIED AS MOOT**.

JS - 6   **LINK:** 1035, 1048

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

      In an effort to justify Petersen's years long failure to diligently pursue a resolution of the pending claims, Plaintiffs suggest that Petersen's ill-health is a good reason for the continuance and that denial would be an abuse of discretion.  In support they cite Benjamin v. Aroostook Medical Center, Inc., 57 F.3d 101, 107 (1st Cir. 1995) and Smith-Weik Mach. Corp. v. Murdock Mach. & Engineering Co., 423 F.2d 842 (5th Cir.1970).  Those cases provide no support at all for their position.  Both cases involved situations in which the illness was unforeseen and arose on short notice.  The Benjamin court specifically stated that "we have suggested that, in deciding a motion for an extension of time, a district court's failure to allow for factors beyond a party's control, such as ***the unexpected illness of counsel,*** may, in a certain case, constitute an abuse of discretion."  57 F.3d at 108.  Another case that Plaintiffs cite notes that a trial court is most often found to have abused its discretion when it fails to accommodate ***changed circumstances***.  Northern Indiana Public Service Co. v. Carbon County Coal Co., 799 F.2d 265, 269 (7th Cir. 1986).  Here the Court is not dealing with a sudden illness, changed circumstances, or factors over which Plaintiffs had no control.  Over a period of years, the Court has repeatedly noted the health issues that have affected the prosecution of this case and insisted that Petersen take steps to insure that his health problems – which are serious, known, and debilitating – did not interfere with the resolution of this dispute.  Because Petersen frequently failed to respond to this Court's concerns, the Court, in granting the most recent continuance, warned in unambiguous terms what would happen if Petersen failed to acknowledge his fragile physical condition and take steps to insure that his health did not further impede resolution of his client's claims.  Having ignored the Court's entreaties, Petersen cannot now claim that he acted diligently.

      ***3.  Prejudice to Defendants***

      There is little doubt that the requested continuance will prejudice the City.  (See generally Walter Decl. ¶¶ 2-4.)  The case is already very old, and involved events that occurred between 8 and 13 years ago.  The presentation of a defense against the claims brought by the four remaining plaintiffs is significantly more complex than the presentation of plaintiffs' case, which became readily apparent to the Court through the conduct of the exemplar trials.  Plaintiffs essentially need only describe the circumstances under which they were not provided the breaks or overtime to which they claim entitlement.  The defense, on the other hand, must present a variety of supervisors who were responsible for numerous employees and the enforcement of a variety of overtime policies to counter such testimony.  Accordingly, the coordination of witnesses who were percipient to events in those years, which is difficult under ideal circumstances, has become increasingly difficult as time has passed.  Many of the witnesses have long since retired from the LAPD, some have moved out of state, and a number of them cannot be located.  At least one, former Deputy Chief Kenneth Garner, has died.  Others hold responsible positions in other departments and are not readily available, notably former Chief

JS - 6   **LINK:** 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

William Bratton, who is now the Chief of Police in New York City, and James Craig, who is Chief of Police in Detroit, Michigan. As defense counsel notes, each successive delay multiplies the difficulty in obtaining far flung witnesses to attend a trial in Los Angeles.

In addition, the requested continuance interferes with the Court's ability to manage its docket. For the last five years, the Court has frequently and bluntly expressed its frustration over the parties' failure to resolve this and the related cases. The Hafif firm got the message and took steps to obtain a final resolution of the dispute. Petersen, on the other hand, seems uninterested in ever having the case finally resolved. This Court has done everything within its power to achieve a resolution of this case on the merits, and has set trial dates to accomplish that result. But there comes a time when the Court's need to control its docket must prevail over counsel's repeated failure to meet his obligations to the Court. That time is now.

### 4. *Need For a Continuance*

Plaintiffs want a continuance, but had counsel heeded the Court's admonition, there would have been no need for one. The need, such as it is, has been created by counsel's refusal to respect the Court's warning. Counsel can hardly claim that a self-created need trumps the interests of the Court and the opposing party, or counsel's obligation to show diligence.

### B. DISMISSAL FOR LACK OF PROSECUTION

The standard for dismissing a case for lack of prosecution is similar to the standard imposed for granting or denying a continuance. The Ninth Circuit teaches:

> District courts have inherent power to control their dockets. In the exercise of that power they may impose sanctions including, where appropriate, default or dismissal. . . . [W]e have allowed its imposition [for failure to comply with court orders] only after requiring the district court to weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions.

Here, those factors favor dismissal.

/ / /

JS - 6   **LINK:** 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

### 1. Expeditious Resolution of Litigation

Not only has this objective not been achieved in this litigation, the discussion above demonstrates that Petersen has acted to thwart resolution. Following the completion of the exemplar trials in 2011, the parties were moving expeditiously toward a resolution of this and other pending LAPD wage cases. As noted, due to what appears to be a fee dispute, Petersen derailed the negotiations which required substantial effort of the Court and a Special Master to get them partially back on track.[6] In the meantime, Petersen did nothing to expedite resolution of the claims of those plaintiffs who Petersen persuaded to abandon the settlement group and throw in with him. His actions have plainly been contrary to the public interest in prompt disposition of lawsuits.

This factor favors dismissal.

### 2. The Court's Need to Manage Its Docket

The discussion of diligence and prejudice to defendants in Section II.A.2. & 3. encompasses this factor. The Court also notes that it currently has approximately 300 pending civil cases and several dozen criminal cases, including two complex cases with a total of 44 defendants, all of which compete for the Court's time. This case is the oldest case on the Court's docket; Petersen's conduct throughout the litigation has made it extremely difficult for the Court to manage the case. To repeat, the Court warned Petersen in multiple recent status conferences that, one way or another, the case had to be resolved. That warning was ignored. It is now in the public interest for the Court to move on from this case without further delay.

This factor favors dismissal.

### 3. The Risk of Prejudice to the City

This was discussed in II.A.3. above. Further delay of the trial will cost the City additional money and manpower, all of which is ultimately borne by taxpayers. Any further delay prejudices the City. This factor favors dismissal.

---

[6]The Court notes that Petersen denies that the dispute is related to any fee sharing arrangement between counsel. However, even Gregory Hafif, at a status conference held on September 29, 2011, conceded that counsel were involved in an attorney's fee fight. (Docket No. 924, Transcript, at 8.)

JS - 6  **LINK:** 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

### 4. Policy Favoring Decisions on the Merits

The Court is well aware of this factor and has done everything reasonably within its power to insure that the claims were resolved on the merits. The Court presided over the exemplar trials in 2011 after numerous conferences with all counsel regarding the best means of efficiently resolving the claims of all plaintiffs. The approach developed by the Court and counsel was working; Petersen derailed it. That the parties and the Court find themselves in the present situation is the result not of anything done by the City or the Court, but rather by Petersen. In these circumstances, this factor cannot trump the other factors favoring dismissal. See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1022 (9th Cir. 2002) (public policy favoring decisions on the merits is not enough to preclude dismissal where other factors favor dismissal).

### 5. The Availability of Less Drastic Alternatives

In the circumstances confronting this Court – an 11 year old case, deceased witnesses, witnesses who cannot be found, witnesses out of state with critical roles in public safety, and an attorney who has sought to undermine the ability of the Court to resolve the pending claims and has ignored the consequences of failing to heed the Court's warnings – the Court does not see any available alternatives that will accomplish its goals. See Link v. Wabash, 370 U.S. 626, 635 (1962) (exercise of discretion allows Court to place particular violation of court order in context of other evidence of delay). The Court has endeavored to avoid a situation where sanctions of any sort are appropriate. The discussion above indicates that, even after Petersen made multiple attempts to scuttle the method employed by the Court and counsel to resolve these cases (including the conduct of exemplar trials), it gave Petersen a trial date for the remaining four plaintiffs, and then continued that date at his request. But the Court made it clear that the end was near, one way or another, and that Petersen needed to insure the availability of trial counsel to try this case on the date ***Petersen*** requested. As noted repeatedly above, the Court issued warnings to Petersen regarding his obligation to comply with the Court's schedule and the consequences if he failed. Petersen had it within his power to avoid this order, but failed to use it. The circuit has held that the Court was not under an obligation to consider any alternative sanctions where it warned that failure to comply with a Court order will result in dismissal. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) citing Henderson v. Duncan, 775 F.2d 1421, 1424 (9th Cir. 1986).

This factor favors dismissal.

JS - 6  **LINK:** 1035, 1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-2190 GAF (AJWx) | Date | January 8, 2014 |
|---|---|---|---|
| Title | James Nolan v. City of Los Angeles, et al. | | |

# III.
# CONCLUSION

After careful consideration of the relevant factors, the Court **DENIES** the request to continue the trial and **DISMISSES WITH PREJUDICE** the claims of Plaintiffs O'Neil Carter, Angela Chu, Tom Danzek and Henry Quan for lack of prosecution.

**IT IS SO ORDERED.**